**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 26 2013, 5:39 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**BRIAN D. HODGES**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIAN D. HODGES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1302-CR-71 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Linda E. Brown, Judge
Cause No. 49F10-1204-CM-24028

**November 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Brian Hodges appeals his convictions for Class A misdemeanor operating a vehicle while intoxicated. Finding that the State did not withhold exculpatory evidence, the trial court did not violate the separation-of-witnesses order, the trial court did not abuse its discretion by admitting allegedly perjured testimony, and the evidence was sufficient to convict Hodges for operating while intoxicated, we affirm.

**Facts and Procedural History**

On an early morning in April 2012, Hodges was driving east on 82nd Street in Indianapolis after meeting a friend for a drink at Fox and Hound. He finished his last beer just before he left the restaurant. Meanwhile, Indiana State Police Troopers Roosevelt Williams and Matthew Beaver were patrolling the area near 6061 East 82nd Street. Because Trooper Williams had recently graduated from the police academy, Trooper Beaver was assisting in a training capacity. At 2:53 a.m., the officers saw Hodges driving quickly. They activated the radar, which showed that Hodges was driving fifty-nine miles per hour in a forty-mile-per-hour zone.

Trooper Williams stopped Hodges and asked him for his license and registration. Trooper Beaver also got out of the car, but he stayed behind Hodges's car to observe Trooper Williams. Trooper Williams immediately smelled alcohol inside the car. When Trooper Williams told Hodges why he was stopped, he noticed that Hodges's speech was slurred and his eyes were glassy and bloodshot. When Trooper Williams asked Hodges how much he had to drink, Hodges replied that he had one beer about twenty minutes ago. Tr. p. 11.

Trooper Williams asked Hodges to exit the car. As he did so, Trooper Williams noticed that Hodges had unsteady balance. The trooper then asked Hodges if he had any physical impairments that would affect his ability to perform field-sobriety tests. According to Trooper Williams, Hodges stated that he did not have any issues preventing him from performing the tests.

First, Trooper Williams administered the Horizontal Gaze Nystagmus test. During this test, the officer examined whether Hodges's eyes followed the light smoothly. According to Trooper Williams, Hodges exhibited all six clues for the test, which is a failing score. Next, Trooper Williams administered the Walk and Turn test, whereby Hodges was required to count out loud while walking on an imaginary straight line before turning around. According to Trooper Williams, Hodges exhibited two clues out of eight, which is a failing score on the test. Finally, Trooper Williams administered the One-Leg Stand, whereby Hodges was required to stand on one leg, keep his arms to the side, and count until the officer instructed him to stop. According to Trooper Williams, Hodges exhibited all six clues, which is a failing score. Trooper Williams then administered a portable breath test, which was positive for alcohol. Based upon Hodges's failure of the three tests and his observation of Hodges's bloodshot and glassy eyes, slurred speech, and the smell of alcohol, Trooper Williams determined that he had probable cause to believe Hodges was intoxicated.

Trooper Williams then read Hodges Indiana's implied consent law, and Hodges consented to taking a chemical breath test. Troopers Williams and Beaver drove Hodges to the Indianapolis Metropolitan Police Department substation at 1605 East 86th Street.

3

Trooper Williams filled out the probable-cause affidavit, but Trooper Beaver, who was training Trooper Williams, signed it.

Before the chemical breath test was taken, Troopers Beaver and Williams observed Hodges for twenty minutes to ensure he did not eat, smoke, drink, or place anything in his mouth. Trooper Beaver administered the chemical breath test at 3:33 a.m. The chemical breath test returned a reading of 0.10. Hodges was then placed under arrest.

The State charged Hodges with Count I, Class A misdemeanor operating a vehicle while intoxicated, and Count II, Class C misdemeanor operating a vehicle with a blood-alcohol concentration between 0.08 and 0.14, and a speeding infraction. Appellant's App. p. 1, 9. Hodges was represented by an attorney at his bench trial.

At the beginning of trial, the trial court entered a separation-of-witnesses order at the State's request. Dr. Daniel McCoy, an expert in toxicology, testified for Hodges. According to McCoy, because alcohol is absorbed in the blood stream after consumption, Hodges's blood alcohol content was actually 0.03 lower when the officers observed Hodges driving than when the chemical breath test was administered. Tr. p. 132. Dr. McCoy concluded that Hodges's blood-alcohol concentration was actually a 0.07 when the officers observed him driving. *Id.* at 133.

Hodges also testified in his own defense. According to Hodges, he told Trooper Williams that he was "forty-percent disabled" and would be unable to perform the field-sobriety tests. *Id.* at 104.

The trial court found Hodges guilty of Counts I and II. *Id.* at 164. However, the trial court merged Count II into Count I and entered judgment for Count I only. Appellant's

4

App. p. 6; Tr. p. 167-68.  The trial court also found Hodges guilty of the speeding infraction.  The trial court sentenced Hodges to 365 days in the Marion County Jail, with 363 days suspended to probation.  Tr. p. 168.  Hodges was also ordered to complete forty-eight hours of community service.[1]  *Id.*

Hodges, pro se, now appeals.

## Discussion and Decision

Hodges claims that the State violated his due-process rights by withholding exculpatory evidence, the trial court abused its discretion by violating the separation-of-witnesses order, the trial court abused its discretion by permitting the State to present allegedly perjured testimony from Troopers Williams and Beaver, and the evidence is insufficient to support his conviction for Class A misdemeanor driving while intoxicated.

## I. Due Process

Hodges contends that he was denied due process because Trooper Williams had notes that were destroyed and not provided to the defense.  He claims that the State denied him access to material exculpatory evidence.  The State argues that Hodges waived his claim because he did not object at trial.  *Brown v. State*, 929 N.E.2d 204, 206-07 (Ind. 2010).  We agree he has waived this argument.

Waiver notwithstanding, the State did not violate Hodges's due-process rights.  The State has a duty to disclose evidence favorable to a criminal defendant.  *Badelle v. State*,

---

[1] The Order of Probation actually states that Hodges is required to complete eighty hours of community service.  Appellant's App. p. 12.  The additional thirty-two hours were added because Hodges's conviction in this case violated the terms of his probation in another case.  *See* Tr. p. 170-73.  Instead of terminating probation in the previous case when he completed thirty-two hours of service, the court added his community-service requirement to the Order of Probation in this case.  *See id.* at 172-73.

754 N.E.2d 510, 525 (Ind. Ct. App. 2001), *trans. denied*. The U.S. Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To prevail on a *Brady* claim, Hodges must establish: (1) that the prosecution suppressed evidence; (2) that the suppressed evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. *Shelby v. State*, 986 N.E.2d 345, 358 (Ind. Ct. App. 2013) (citing *Bunch v. State*, 964 N.E.2d 274, 297 (Ind. Ct. App. 2012), *trans. denied*), *trans. denied*. "Evidence is 'material' under *Brady* only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. Reasonable probability is "a probability sufficient to undermine the confidence of the outcome." *Id.* However, if the evidence "was available to a defendant through the exercise of reasonable diligence," then the State will not be deemed to have suppressed material evidence. *Id.*

Here, Hodges became aware of the existence of Trooper Williams's notes during a pretrial deposition of Trooper Williams. Appellant's Br. p. 15-16. The notes in question were not submitted with the case file. *Id.* at 15 n.9. Hodges does not present any evidence that the notes in question were actually destroyed. Because Hodges knew of the existence of these notes, he could have filed a specific discovery request for the notes, which he did not do. Had Hodges exercised reasonable diligence, he might have obtained the notes. For this reason, the State has not suppressed material evidence. *See Shelby*, 986 N.E.2d at 358.

Even if Hodges had proved that the notes were destroyed, he has not demonstrated that the notes contained evidence favorable to the defense. *Id.* In fact, the notes that were supposedly withheld from the defense were Trooper Williams's marks for clues and other notes he made while administering the field sobriety tests. Because Trooper Williams testified to Hodges failing all three tests, it is likely that these notes would contain further evidence of Hodges's intoxication rather than help his case. Thus, the State was not required to preserve Trooper Williams's notes. *Noojin v. State*, 730 N.E.2d 672, 676 (Ind. 2000) ("This unpreserved evidence does not meet the requirement of possessing 'an exculpatory value that was apparent before the evidence was destroyed.' It is not exculpatory at all.").

## II. Separation of Witnesses

Hodges also argues that the trial court violated a separation-of-witnesses order by permitting Trooper Beaver to remain in the courtroom while Trooper Williams testified. Appellant's Br. p. 17.

At the beginning of trial, the State moved for a separation of witnesses. Tr. p. 6. When the State called its first witness, the State informed the trial court that Trooper Williams would be its first witness and that Trooper Beaver would assist the State. *Id.* at 7. Hodges made no objection to the separation of witnesses or the officers' testimony, nor did he in any way raise such a claim at trial. "When a defendant fails to make a contemporaneous objection to the admission of evidence at trial . . . any error is generally waived for the purposes of appeal." *Orr v. State*, 968 N.E.2d 858, 860 (Ind. Ct. App. 2012) (citing *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000)).

7

Because Hodges did not object at trial to Trooper Beaver remaining in the courtroom, he has waived the issue. *Morrell v. State*, 933 N.E.2d 484, 490 (Ind. Ct. App. 2010) (where a defendant does not object to a violation of a witness-separation order, the issue is waived). Waiver notwithstanding, Indiana Evidence Rule 615 states:

> At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion. This rule does not authorize the exclusion of . . . (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney . . . .

This rule codifies the "long-standing Indiana tradition of permitting a police officer to remain in the courtroom at counsel's table even though the officer may be called as a witness." *Stafford v. State*, 736 N.E.2d 326, 329 (Ind. Ct. App. 2000), *trans. denied*. In interpreting this rule, the police officer is designated as the State's representative. *Id.* For this reason, Trooper Beaver is exempt from the separation-of-witnesses order.

### III. Admission of Allegedly Perjured Testimony

Hodges also argues that the trial court abused its discretion by erroneously permitting perjured testimony from Troopers Williams and Beaver. Appellant's Br. p. 13-16. He claims that the officers committed perjury because Trooper Williams filled out the affidavits for probable cause, but Trooper Beaver signed them.

It is well-settled that "the knowing use of perjured testimony constitutes grounds for reversal." *Baxter v. State*, 727 N.E.2d 429, 434 (Ind. 2000), *reh'g denied*. However, Trooper Beaver's signature on the affidavits for probable cause do not constitute perjury. Hodges claims that Trooper Beaver committed perjury because he could only see and not hear the exchanges between Trooper Williams and Hodges. Tr. p. 52. However, the

8

paperwork was actually completed by Trooper Williams. *Id.* at 46. Trooper Beaver merely signed it. *Id.* Having Trooper Williams complete the paperwork and Trooper Beaver sign it was a part of Trooper Williams's training program. *Id.* We do not find that this aspect of the training program constitutes perjury.

### IV. Sufficiency of the Evidence

Hodges also contends that the evidence is insufficient to support his conviction for Class A misdemeanor driving while intoxicated.[2] When reviewing the sufficiency of the evidence, "we do not reweigh the evidence or assess the credibility of the witnesses." *K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013) (quoting *Treadway v. State*, 924 N.E.2d 621, 639 (Ind. 2010)). Instead, "we look to the evidence and reasonable inferences drawn therefrom that support the [judgment], and we will affirm the [judgment] if there is probative evidence from which a reasonable [factfinder] could have found the defendant guilty beyond a reasonable doubt." *Id.*

Class A misdemeanor operating a vehicle while intoxicated occurs when a person operates a motor vehicle while intoxicated in a manner that endangers a person. Ind. Code § 9-30-5-2; Appellant's App. p. 9. A person is intoxicated when under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." *Id.* § 9-13-2-86(1). The State must establish impairment regardless of the defendant's blood-alcohol concentration. *Fields v. State*, 888 N.E.2d 304,

---

[2] Hodges also argues that the evidence is insufficient to support his conviction for Class C misdemeanor operating a vehicle with a blood-alcohol concentration between 0.08 and 0.14. Because the trial court merged Hodges's Class C misdemeanor conviction into his Class A misdemeanor conviction, we do not separately address the sufficiency of the evidence with regard to the blood-alcohol conviction. *See, e.g. Fry v. State*, 748 N.E.2d 369, 373 n.2 (Ind. 2001).

307 (Ind. Ct. App. 2008). Impairment may be established by evidence of: "(1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech." *Stephens v. State*, 992 N.E.2d 935, 938 (Ind. Ct. App. 2013) (citation omitted).

Hodges first argues that the evidence was not sufficient to prove that he was intoxicated. The evidence most favorable to the judgment suggests that the State presented evidence of impairment. When Trooper Williams approached the car, he immediately smelled alcohol. Tr. p. 11. After telling Hodges the reason he was stopped, Trooper Williams observed that "his speech was slurred, and his eyes were glassy and bloodshot." *Id.* Hodges also told Trooper Williams that he had "one (1) beer about twenty (20) minutes ago."[3] *Id.* According to Trooper Williams, Hodges had unsteady balance when he was asked to step out of the car. *Id.* at 23. Hodges then failed all three of the field sobriety tests given. *Id.* at 12-23. Finally, the chemical breath test administered after the traffic stop returned a result of 0.10. *Id.* at 64. Together, these facts establish that Hodges had watery or bloodshot eyes, the odor of alcohol on his breath, unsteady balance, failed field sobriety tests, and slurred speech. Although Hodges asserts that the State failed to prove consumption of a significant amount of alcohol and impaired attention and reflexes, the State is only required to produce *evidence* of the factors listed rather than conclusively proving each one.

---

[3] On cross-examination, Hodges admitted to having three beers over the course of the evening. Tr. p. 115.

Hodges next argues that the State failed to prove the element of endangerment necessary to elevate the conviction from Class C to Class A misdemeanor operating while intoxicated. Evidence of intoxication, alone, is insufficient to prove endangerment. *Dorsett v. State*, 921 N.E.2d 529, 532 (Ind. Ct. App. 2010). The State must prove endangerment by proving that "the defendant was operating the vehicle in a condition or manner that *could* have endangered any person, including the public, police, or the defendant." *Staten v. State*, 946 N.E.2d 80, 84 (Ind. Ct. App. 2011), *trans. denied*. Here, the State proved the endangerment element by showing that Hodges was speeding. *See Vanderlinden v. State*, 918 N.E.2d 642, 646 (Ind. Ct. App. 2009) ("Although the only independent evidence of endangerment presented by the State was Vanderlinden's warning for speeding, that evidence is sufficient to support the conviction."), *trans. denied*.

As far as Hodges's claim of disability is concerned, that evidence was presented to the trial court. Hodges's request for us to consider it again is simply a request to reweigh the evidence, which we cannot do.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.